UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO LOPEZ AGUILAR, Plaintiff, v. STEVEN L. DURFOR, et al., Defendants. | Case No. 18-cv-03684-JSC  **ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS**  Re: Dkt. No. 1 |

Petitioner Ernesto Lopez Aguilar ("Mr. Lopez Aguilar") is a citizen of Peru who has been residing in the United States for 15 years. U.S. Immigration and Customs Enforcement ("ICE") detained Mr. Lopez Aguilar in August 2017, and he has remained in custody since that time. Now pending before the Court is Mr. Lopez Aguilar's petition for writ of habeas corpus. (Dkt. No. 1.)[1] Having carefully reviewed the parties' briefing, the Court DENIES Mr. Lopez Aguilar's petition for the reasons set forth below.

**FACTUAL BACKGROUND**

Mr. Lopez Aguilar legally entered the United States in 2003 as a nonimmigrant visitor authorized under the Immigration and Nationality Act ("INA") to remain in the country for six months. (Dkt. No. 10-3 at 2.) Mr. Lopez Aguilar overstayed his visa, and in July 2007, ICE detained him and initiated removal proceedings pursuant to INA § 237(a)(1)(B). (Dkt. Nos. 10-2 at 4, 10-3 at 2.) ICE released Mr. Lopez Aguilar on bond one month later. (Dkt. No. 10-2 at 4.) In July 2012, the government administratively closed Mr. Lopez Aguilar's removal proceedings pending adjudication of his Form I-130, Petition for Alien Relative. (Dkt. No. 10-4 at 2.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Following denial of that petition, in December 2015 an immigration judge ("IJ") granted the government's motion to recalendar removal proceedings against Mr. Lopez Aguilar. (Dkt. No. 10-5 at 3-4.)

In August 2017, ICE again detained Mr. Lopez Aguilar following his release from state custody after his arrest for a domestic violence incident. (Dkt. No. 10-2 at 4.) ICE determined that Mr. Lopez Aguilar should be detained for the remainder of his removal proceedings. (Dkt. No. 10-6 at 2.) Mr. Lopez Aguilar requested review of ICE's custody determination by an IJ. (Dkt. No. 10-6 at 2.) The IJ performed its review and denied bond in September 2017. (Dkt. Nos. 10-1 at ¶ 8 n.1 & 10-7 at 2.)

On October 23, 2017, Mr. Lopez Aguilar filed a motion for reconsideration of the IJ's bond determination. (Dkt. No. 10-9 at 3.) The IJ denied the motion, finding that Mr. Lopez Aguilar "failed to demonstrate materially changed circumstances," and "the court's prior decision contain[ed] no error of law or fact." (Dkt. Nos. 10-8 at 3 & 10-9 at 3.) In a Bond Memorandum dated December 1, 2017, the IJ explained that Mr. Lopez Aguilar "pose[s] a danger to the community" based on his pattern of behavior involving alcohol abuse and his criminal history—five separate arrests between 2007 and 2017 and convictions for assault, misdemeanor burglary, DUI, and violation of probation related to the domestic violence incident. (Dkt. No. 10-9 at 3-5.) Mr. Lopez Aguilar appealed the IJ's custody determination to the Board of Immigration Appeals ("BIA"). (Dkt. No. 10-10 at 4.) On February 12, 2018, the BIA issued a decision upholding the IJ's custody determination and dismissing the appeal. (Dkt. No. 10-10 at 4-5.)

Mr. Lopez Aguilar received a *Rodriguez* bond hearing on March 1, 2018, in which the IJ again denied his request for bond.[2] (Dkt. Nos. 10-1 at ¶ 10, 10-12 at 2.) On March 9, 2018, the IJ

---

[2] On April 4, 2018, the IJ issued a Bond Memorandum stating that, as a result of the United States Supreme Court's ruling in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) on February 27, 2018, the IJ "lacked jurisdiction [on March 1, 2018] to consider Respondent's request for release on bond." (Dkt. No. 10-15 at 3.) In *Jennings*, the Supreme Court held that the Ninth Circuit erred in construing 8 U.S.C. § 1226(a) as providing "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 138 S. Ct. 847. The IJ's memorandum explains that it "scheduled the March 1 bond hearing [prior to *Jennings*] to comply with *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) (*Rodriguez III*)," but the IJ lacked jurisdiction because *Jennings* reversed *Rodriguez III*. (Dkt. No. 10-15 at 3.) Mr. Lopez Aguilar appealed the IJ's March 2018 denial of

2

1  issued a removal order denying Mr. Lopez Aguilar's requests for relief from removal and ordering
2  him removed to Peru.³ (Dkt. No. 10-13 at 3-14.) Mr. Lopez Aguilar appealed the IJ's removal
3  order on March 28, 2018; his appeal is currently pending before the BIA. (Dkt. Nos. 10-1 at ¶ 12,
4  10-14 at 2.)

## PROCEDURAL HISTORY

Mr. Lopez Aguilar filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on June 20, 2018. (Dkt. No. 1.) Thereafter the Court issued an order to show cause as to why the petition should not be granted. (Dkt. No. 5.) The government ("Respondents") responded on July 11, 2018.⁴ (Dkt. No. 10.)

## JURISDICTION

A district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 523 (2003). Here, Mr. Lopez Aguilar argues that his continued detention violates his due process rights. Accordingly, jurisdiction is proper.

## DISCUSSION

Mr. Lopez Aguilar brings three claims for relief: (1) violation of INA § 241(a)(6), 8 U.S.C. § 1231(a), as interpreted by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) violation of his Fifth Amendment right to substantive due process; and (3) violation of his Fifth Amendment right to procedural due process. Mr. Lopez Aguilar asks the Court to assume jurisdiction over the matter, grant him a writ of habeas corpus directing Respondents to immediately release him, and "[o]rder Respondents to refrain from transferring [him] during the

---

bond, but subsequently withdrew his appeal. (Dkt. No. 10-16 at 3-4.)
³ The Court is concerned that the removal order submitted by Respondents is heavily redacted and omits an entire portion of Mr. Lopez Aguilar's requested relief. (See Dkt. No. 10-13.) However, Mr. Lopez Aguilar's habeas petition does not challenge the findings in the removal order itself, and instead "seek[s] relief related only to his custody status." (Dkt. No. 1 at ¶ 22.) That said, the Court advises Respondents to submit future exhibits for the Court's review in unredacted form with administrative motions to seal.
⁴ Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 11.)

pendency of these proceedings and while [he] remains in Respondents' custody."[5] (Dkt. No. 1 at 7.)

The government responds that Mr. Lopez Aguilar's claims fail because they are incorrectly premised on the assumption that his detention is governed by 8 U.S.C. § 1231, which applies only when a detainee is subject to a final order of removal. Respondents assert that because Mr. Lopez Aguilar's appeal is pending before the BIA, he is not subject to a final removal order; instead, Mr. Lopez Aguilar is detained pursuant to 8 U.S.C. § 1226(a), and therefore, the requirements for continued detention under 8 U.S.C. § 1231(a) set forth in *Zadvydas* are inapplicable.

## I. Statutory Authority for Detention

The INA provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id*. The parties dispute whether the Attorney General's current authority to detain Mr. Lopez Aguilar derives from section 1226 or section 1231. Under section 1226(a), the Attorney General has discretionary authority to arrest and detain a noncitizen pending a removal decision. Section 1231 applies once a removal order becomes final, and provides for mandatory detention during a 90-day removal period, 8 U.S.C. § 1231(a)(1), after which continued detention pending removal is discretionary, 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 682.

An order of removal becomes administratively final when the BIA affirms the IJ's order on appeal, or the period in which the order may be appealed to the BIA expires. 8 U.S.C. §

---

[5] Mr. Lopez Aguilar provides no argument regarding his request for an order from the Court prohibiting his transfer. Respondents insist that this Court is without jurisdiction to issue such an order because "[i]t is within Respondents discretion to determine where to house Petitioner while he is detained during his removal proceedings." (Dkt. No. 10 at 7) (citing 8 U.S.C. § 1231(g)(1); *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 863 (9th Cir. 1985) (noting that transfer of petitioner "is within the province of the Attorney General to decide," but finding an abuse of discretion under the facts of the transfer at issue in that case). Mr. Lopez is essentially requesting a preliminary injunction, and absent any allegation that he is in danger of suffering harm or a deprivation of some right based on a transfer, the Court agrees that it is without jurisdiction to issue such an order at this time.

4

1101(a)(47)(B). There is no dispute that Mr. Lopez Aguilar appealed the IJ's March 2018 removal order, and that the appeal is currently pending before the BIA. Thus, Mr. Lopez Aguilar's removal order is not administratively final because it has yet to be affirmed by the BIA. As a result, he is not detained pursuant to section 1231, but is instead detained under section 1226(a).

Because Mr. Lopez Aguilar's statutory claim is premised on Respondents' alleged violation of section 1231, it must fail.[6]

## II. Due Process Claims

### A. Substantive Due Process

Mr. Lopez Aguilar appears to premise his substantive due process claim on his alleged detention under section 1231, (*see* Dkt. No. 1 at ¶ 29) ("*Zadvydas* . . . interpreted INA § 241 to allow continued detention only for a period reasonably necessary to secure the alien's removal"). He argues that "[w]hile Respondents would have a compelling interest in detaining Mr. Lopez in order to effect his removal, that interest does not exist if Mr. Lopez cannot be removed." (*Id.*) Mr. Lopez Aguilar provides no argument explaining why he "cannot be removed." Presumably, it is because his appeal is pending before the BIA. As explained above, Mr. Lopez Aguilar's pending appeal indicates that he is detained pursuant to section 1226, not section 1231. Thus, the Court will address his substantive due process claim as it pertains to his continued detention under section 1226.

In *Prieto-Romero*, the court concluded that even after a petitioner receives a bond hearing, section 1226(a) does not authorize indefinite detention, rather "the Attorney General's detention authority under § 1226(a) [is] limited to the period reasonably necessary to bring about an alien's removal from the United States." 534 F.3d at 1063. The court nonetheless held that

---

[6] Mr. Lopez Aguilar is represented by counsel and had the opportunity to submit a traverse more fully explaining his position in response to the government's return to the petition for writ of habeas corpus. He did not do so. And although Mr. Lopez Aguilar appears to challenge the adequacy of the IJ's custody determinations, (see Dkt. No. 1 at ¶ 26) ("Petitioner is not a danger to the community"), he provides no further argument stating why the IJ's custody determination was inadequate. Mr. Lopez Aguilar's single, conclusory statement concerning the adequacy of the IJ's custody determination does not overcome the fatal flaw of his statutory claim for relief.

5

although the petitioner's three-year long detention qualified as prolonged, it did not qualify as indefinite. *Id*. at 1062. The court distinguished *Zadvydas*, in which the Supreme Court concluded that a noncitizen detainee was entitled to release if he demonstrated "no significant likelihood of removal in the reasonably foreseeable future." *Id*. (internal quotation marks and citation omitted). The *Prieto-Romero* court emphasized that the *Zadvydas* petitioners could not be removed because although they had exhausted all judicial and administrative appeals processes and had been ordered removable, their designated countries either refused to accept them or lacked a repatriation treaty with the United States, placing them in a "removable-but-unremovable limbo." *Id*. (internal quotation marks and citation omitted). By contrast, in *Prieto–Romero* the government could successfully deport the petitioner to Mexico in the event of unsuccessful judicial review; thus, the petitioner faced a "significant likelihood of removal in the reasonably foreseeable future." *Id*. The court concluded that, despite the judicial review process causing delays in removal, and notwithstanding the absence of a definite end date in petitioner's detention, these factors alone did not make his detention indefinite. *Id*. at 1063.

Here, although Mr. Lopez Aguilar's nearly yearlong detention is similarly prolonged, it does not qualify as indefinite. His arguments to the contrary are wholly conclusory and unpersuasive. Mr. Lopez Aguilar contends only that "it is extremely unlikely that the Respondents will be able to remove [him] in the reasonably foreseeable future," but provides no explanation as to why that is so. (*See* Dkt. No. 1 at ¶ 25.) Respondents counter that if Mr. Lopez Aguilar's "removal order becomes administratively final, Respondents are prepared to execute that order." (Dkt. No. 10 at 7.) Furthermore, unlike the *Zadvydas* petitioners, there is no evidence that Mr. Lopez Aguilar is unremovable because his home country of Peru will not accept him; rather, the government is ultimately capable of deporting him once his removal order is final. (See Dkt. No. 10-1 at ¶ 15) ("Removal of aliens to Peru is generally routine and accomplished promptly after a removal is administratively final.") There is no reason to believe that Mr. Lopez Aguilar will not be promptly removed once his removal order is administratively final. Thus, while his continued detention is prolonged, it is not indefinite; instead, his removal is reasonably foreseeable.

6

**B. Procedural Due Process**

Mr. Lopez Aguilar broadly alleges that he has been denied a "timely and meaningful opportunity to demonstrate that he should not be detained." (Dkt. No. 1 at ¶ 31.) As Respondents point out, however, Mr. Lopez fails to specify any procedural or constitutional deficiencies with either the IJ or BIA's custody determinations. Furthermore, the record reflects that Mr. Lopez Aguilar was afforded a "timely and meaningful opportunity" to challenge his detention on four separate occasions. First, Mr. Lopez Aguilar requested and received an initial custody determination before an IJ in September 2017 after being detained by ICE in August 2017. (Dkt. No. 10-9 at 3.) Mr. Lopez Aguilar then requested and received a redetermination of his custody status in October 2017. (*Id*.) Following the IJ's continued denial of bond, Mr. Lopez Aguilar appealed to the BIA, which reaffirmed the IJ's determination in February 2018. (Dkt. No. 10-10 at 4.) Finally, the IJ conducted a *Rodriguez* bond hearing on March 1, (Dkt. No. 10-12 at 2), before determining that it lacked jurisdiction to do so based on the Supreme Court's ruling in *Jennings*, (Dkt. No. 10-15 at 3). Mr. Lopez initially appealed the IJ's bond determination, but subsequently withdrew that appeal. (Dkt. No. 10-16 at 4.) Simply put, the record refutes Mr. Lopez Aguilar's procedural due process claim.

Although "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," detention during those proceedings is "a constitutionally valid aspect of the deportation process." *Denmore*, 538 U.S. at 523 (internal quotation marks and citation omitted). Mr. Lopez Aguilar has been afforded due process of law during the deportation proceedings at issue, and his continued detention is constitutional.

**CONCLUSION**

For the reasons described above, Plaintiff's petition for habeas relief is DENIED without prejudice.

This Order disposes of Docket No. 1.

**IT IS SO ORDERED.**

Dated: August 2, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge